## Reed's Estate

*Roger M. Brown*, for claimant.
*Reed & Spofford*, for accountant.

WAITE, P. J., November 6, 1942.—After two hearings to allow the claimant properly to prove its claim in the above estate, the following order was made: "Now, to wit, April 17th, 1941, the claim of Mathew H. Taggart, Insurance Commissioner of the Commonwealth of Pennsylvania, Liquidator of the Keystone Indemnity Exchange, in the amount of $166.08, is allowed."

No claim for witness fees was made at the audit. The matter is now before the court on exceptions and a rule to show cause granted on claimant's petition for the allowance of witness fees and mileage covering 890 miles of travel for each of two witnesses brought from Philadelphia to testify in the case at the first hearing, in addition to the fees of one witness from Erie who testified at the second hearing.

The allowance of the claim depended upon the identity of decedent and a Mary E. Reed named in a liability insurance policy issued by the claimant. The application for the insurance bearing the signature of a Mary E. Reed was offered and received in evidence. The allowance of the claim depended upon whether or not

the signature affixed to the application was that of the decedent. Neither of the witnesses from Philadelphia, who testified at the first hearing, knew the decedent or had seen her write. They were not experts in handwriting and were not, therefore, qualified to testify as to her signature. Based on this testimony alone, the claim must have been disallowed. However, at the suggestion of the court that a witness be produced qualified to testify as to the signature of the decedent, the case was continued, and at the second hearing Roy C. Mauer, of the First National Bank, where decedent had kept her account, and qualified as an expert, after a comparison of decedent's signature card at the bank and other admittedly genuine signatures of decedent, testified that the signature to the application for insurance was that of decedent. Based upon this testimony the claim was allowed.

Under the facts in this case, we are of opinion that the claim for witness fees, including mileage, of the witnesses brought from Philadelphia should be disallowed. The fees claimed amount to more than one third of the amount claimed and had nothing to do with the establishment of the claim.

The allowance of proper witness fees as a part of the costs to a successful litigant is a matter of course. It is somewhat different in the proof of claim at a hearing in the audit of an account in the orphans' court. The fiduciary may not know whether or not the claim is proper, or even if he personally believes it to be proper he may not be willing to take the risk of paying it without the protection of an order of court. The purpose of a hearing on an audit of a fiduciary's account is to afford the claimant an opportunity properly to prove his claim. In such cases, ordinarily, witness fees are not allowed. Were a fiduciary with full knowledge of the facts arbitrarily and without reason to deny a just claim, thereby putting the claimant to unnecessary expense in

producing necessary and competent witnesses, a different rule would apply.

This is the first time in our experience on the bench that fees have been claimed in the proving of an account against a decedent's estate. The allowance of such fees as costs is within the discretion of the court: Toomey's Estate, 150 Pa. 535. To allow such fees for witnesses brought from a great distance and whose testimony is incompetent or without probative value in establishing a claim would be inequitable and unjust.

The exceptions are, therefore, dismissed.

And now, to wit, November 6, 1942, the rule to show cause heretofore granted on exceptions for allowance of witness fees is discharged.